## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FIRST PRIORITY LIFE INSURANCE COMPANY, INC., *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16- 587C Judge Wolski |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' SUR-REPLY TO THE UNITED STATES' MOTION TO DISMISS

Lawrence S. Sher (D.C. Bar No. 430469)
**REED SMITH LLP**
1301 K Street NW
Suite 1000-East Tower
Washington, DC 20005
Telephone: 202.414.9200
Facsimile: 202.414.9299
Email: lsher@reedsmith.com

*Of Counsel:*

Daniel I. Booker (D.C. Bar No. 377926)
Kyle R. Bahr (D.C. Bar No. 986946)
Conor M. Shaffer (PA Bar No. 314474)
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: 412.288.3131
Facsimile: 412.288.3063
Email: dbooker@reedsmith.com
          kbahr@reedsmith.com
          cshaffer@reedsmith.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................1

I.   DEFENDANT'S 12(B)(1) ARGUMENTS ATTACK THE MERITS, NOT THE
     COURT'S SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS'
     CLAIMS ..............................................................................................................1

     A.   When Payment is Due Under § 1342 is a Merits Question ....................3

     B.   Deference is a Merits Question.................................................................4

     C.   Reasonableness is a Merits Question .......................................................6

II.  PLAINTIFFS' CLAIMS ARE RIPE ...................................................................6

III. COUNT II STATES A VALID CLAIM FOR BREACH OF EXPRESS
     CONTRACT .........................................................................................................8

IV.  COUNT III STATES A VALID CLAIM FOR BREACH OF IMPLIED-IN-
     FACT CONTRACT.............................................................................................10

     A.   The "Surrounding Circumstances" Include Government Conduct........10

     B.   The Complaint Alleges Actual Authority .............................................11

     C.   HHS Officials Had Contractual Authority............................................12

     D.   Defendant Undermines Its Preclusion Argument .................................13

CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ARRA Energy Co. I v. United States,*
   97 Fed. Cl. 12 (2011) ...................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................8

*Bobula v. U.S. Dep't of Justice,*
   970 F.2d 854 (Fed. Cir. 1992) ......................................................................3

*Brooks v. Dunlop Mfg. Inc.,*
   702 F.3d 624 (Fed. Cir. 2012) ....................................................................10

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.,*
   527 F.3d 1278 (Fed. Cir. 2008) ....................................................................6

*CBY Design Builders v. United States,*
   105 Fed. Cl. 303 (2012) ................................................................................7

*Cessna Aircraft Co. v. Dalton,*
   126 F.3d 1442 (Fed. Cir. 1997) ..................................................................13

*Chevron U.S.A., Inc. v. United States,*
   20 Cl. Ct. 86 (1990) ....................................................................................12

*Clark v. United States,*
   322 F.3d 1358 (Fed. Cir. 2003) ....................................................................2

*Davis Wetlands Bank, LLC v. United States,*
   114 Fed. Cl. 113 (2013) ................................................................................9

*FEC v. Democratic Senatorial Campaign Comm.,*
   454 U.S. 27 (1981) ........................................................................................5

*Fireman v. United States,*
   44 Fed. Cl. 528 (1999) ..................................................................................4

*H. Landau & Co. v. United States,*
   886 F.2d 322 (Fed. Cir. 1989) ....................................................................12

*Henke v. United States,*
   60 F.3d 795 (Fed. Cir. 1995) ........................................................................6

*Hercules, Inc. v. United States,*
   516 U.S. 417 (1996) ..............................................................................10, 11

*Hymas v. United States,*
    810 F.3d 1312 (Fed. Cir. 2016)................................................................................9

*Massie v. United States,*
    226 F.3d 1318 (Fed. Cir. 2000)................................................................................3

*Mastrolia v. United States,*
    91 Fed. Cl. 369 (2010) ..........................................................................................2

*N.Y. Airways v. United States,*
    369 F.2d 743 (Ct. Cl. 1966) ........................................................................8, 11, 12

*Nat'l R.R. Passenger Corp. v. Atchison,*
    470 U.S. 451 (1985)..............................................................................................10

*Palmer v. United States,*
    168 F.3d 1310 (Fed. Cir. 1999)................................................................................2

*Pan Am. World Airways v. United States,*
    122 F. Supp. 682 (Ct. Cl. 1954) ..............................................................................4

*Parker v. Office of Pers. Mgmt.,*
    974 F.2d 164 (Fed. Cir. 1992)..................................................................................5

*Pauley v. Beth-Energy Mines, Inc.,*
    501 U.S. 680 (1991)................................................................................................5

*Prairie Cnty. v. United States,*
    782 F.3d 685 (Fed. Cir. 2015)................................................................................11

*Ralston Steel Corp. v. United States,*
    340 F.2d 663 (Ct. Cl. 1965) ....................................................................................2

*Redondo v. United States,*
    542 F. App'x 908 (Fed. Cir. 2013) ..........................................................................6

*Roberts v. United States,*
    745 F.3d 1158 (Fed. Cir. 2014)..........................................................................1, 2

*San Carlos Irrigation & Drainage Dist. v. United States,*
    84 Fed. Cl. 786 (2008) ..........................................................................................9

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974)............................................................................................4, 7

*Shell Oil Co v. United States,*
    751 F.3d 1282 (Fed. Cir. 2014)..............................................................................12

*St. Christopher Assoc., L.P. v. United States,*
    511 F.3d 1376 (Fed. Cir. 2008)................................................................................9

*Stanwyck v. United States*,
    127 Fed. Cl. 308 (2016) .................................................................................10

*Terran v. Sec'y of HHS*,
    195 F.3d 1302 (Fed. Cir. 1999).........................................................................3

*Todd v. United States*,
    386 F.3d 1091 (Fed. Cir. 2004).........................................................................3

*TrinCo Inv. Co v. United States*,
    722 F.3d 1375 (Fed. Cir. 2013).........................................................................9

*United States v. King*,
    395 U.S. 1 (1969)...............................................................................................3

**Statutes**

10 U.S.C. § 2306c ...........................................................................................13

28 U.S.C. § 1491(a)(1)......................................................................................2

31 U.S.C. § 1341(a)(1)................................................................................12, 13

42 U.S.C. § 18062 (ACA § 1342)........................................................... *passim*

**Rules**

Fed. R. Civ. P. 8(d) .........................................................................................13

Fed. R. Civ. P. 12(b)(1)............................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................ *passim*

**Regulations**

45 C.F.R. § 153.510 .......................................................................................2, 9

**Other Authorities**

Comp. Gen. B-325630 (Sept. 30, 2014) ........................................................12

## ARGUMENT

**I.    DEFENDANT'S 12(B)(1) ARGUMENTS ATTACK THE MERITS, NOT THE COURT'S SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS**

Plaintiffs First Priority Life Insurance Company, Inc., and other Highmark Plaintiffs (collectively, "Plaintiffs"), with leave of this Court, file this sur-reply to respond to several new arguments and related issues Defendant raised in its reply brief ("Reply") (ECF No. 17) in support of its Motion to Dismiss ("Motion" or "Mot.") (ECF No. 8).  Defendant does not dispute the applicable motion-to-dismiss standards described at pages 15-17 of Plaintiffs' opposition brief ("Opposition" or "Opp.") (ECF No. 12).  Although Defendant moves to dismiss Counts I-V for lack of jurisdiction under Rule 12(b)(1),[1] its Rule 12(b)(6) motion is limited to Counts II-V, Plaintiffs' contract-based and takings claims.

Rather than challenging any jurisdictional facts on its Rule 12(b)(1) motion,[2] Defendant's Reply further exposes its improper challenge to the *merits* of Plaintiffs' claim by disputing when and how much Plaintiffs are owed under the relevant statute, and urging the Court to give deference to selective agency pronouncements in order to determine its Tucker Act jurisdiction. *See* Reply at 2-10; Opp. at 15-16, 20-21 (citing authorities prohibiting the injection of merits issues into a 12(b)(1) analysis).  Defendant's concessions that § 1342 is a money-mandating statute and that Plaintiffs are QHPs eligible for risk corridors payments under the statute ends the jurisdictional inquiry[3] – the rest of Defendant's arguments improperly raise merits issues, not jurisdictional ones.  *See, e.g.*, Reply at 3 n.3 ("The issue we have presented to the Court is … whether any amount is due [to Plaintiffs] at this time.").  Plaintiffs already have demonstrated that these are classic merits-based questions.  *See, e.g.*, Opp. at 20 (quoting *Roberts v. United*

---

[1]    Defendant's Reply is completely silent regarding the Opposition's case law showing that this Court clearly has Tucker Act jurisdiction over Counts II-V.  *See* Opp. at 22-23.  Defendant has therefore conceded its 12(b)(1) motion regarding Counts II-V, and that portion of the Motion should be denied.

[2]    Defendant's Reply, like its Motion, does not dispute the jurisdictional facts.  *See* Opp. at 16 n.37.

[3]    Defendant's Reply expressly states that "a plaintiff's eligibility for payment under a money-mandating authority" is "not at issue" here.  Reply at 2.

*States*, 745 F.3d 1158, 1161 (Fed. Cir. 2014), for the proposition that "whether [the Plaintiffs] can recover under the particular facts of the case is a merits question and not a jurisdictional one").[4]  While Defendant's Reply repeatedly disputes the merits of Count I, such assertions are not relevant to the jurisdictional question.  *See, e.g.*, *Clark v. United States*, 322 F.3d 1358, 1363 (Fed. Cir. 2003) ("The problem with the [government's] argument is that it confuses the issue of jurisdiction with the question of whether [Plaintiffs] can prevail on the merits."); *Palmer v. United States*, 168 F.3d 1310, 1312-13 (Fed. Cir. 1999) (chiding Defendant's improper intermingling of jurisdictional and merits-based arguments).

Plaintiffs' claim for money damages in Count I is straight forward:  under the "shall pay" mandate of Section 1342 and 45 C.F.R. § 153.510, the United States owes Plaintiffs nearly $200 million in past-due CY 2014 risk corridors payments.  *See* Compl. ¶¶ 167-78 (Count I).  The Federal Circuit's clear guidance in *Roberts* confirms that this is precisely the type of claim over which this Court has Tucker Act jurisdiction.  *See Roberts* at 1161; Opp. at 17-18.[5]  Contrary to Defendant's new assertion in its Reply that "the 'presently due' requirement [i]s an independent element of jurisdiction," Reply at 3 n.2, nowhere in the recent *Roberts* decision did the Federal Circuit address such an element while discussing "previous cases" in which "the Supreme Court and [the Federal Circuit] have addressed the standard for determining whether jurisdiction exists under the Tucker Act with respect to a claim for money under a statute and regulations." *Roberts* at 1162.

---

[4]     In its Reply, Defendant even goes so far as attempting to apply *Iqbal and Twombly's* well-known 12(b)(6) standards to the Court's 12(b)(1) analysis by asserting that subject-matter jurisdiction is not "plausible" here.  Reply at 3 n.3.  While the Court's subject-matter jurisdiction over the statutory claim in Count I is certainly plausible, that is not the proper jurisdictional standard under Rule 12(b)(1).  *See, e.g.*, Opp. at 16 (quoting *Mastrolia v. United States*, 91 Fed. Cl. 369, 376 (2010)) ("Plaintiff need only make a *prima facie* showing of jurisdictional facts in order to survive a motion to dismiss").

[5]     *See also* 28 U.S.C. § 1491(a)(1); *Ralston Steel Corp. v. United States*, 340 F.2d 663, 667 (Ct. Cl. 1965) ("In general, a claimant who says that he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous but arguable.").

While Plaintiffs distinguished in their Opposition the applicability of *United States v. King*[6] and similar cases – especially Defendant's selective quote[7] from *Todd v. United States*[8] – because Plaintiffs here claim money damages, not equitable relief,[9] even under *King* and *Todd* this Court has Tucker Act jurisdiction over Plaintiffs' claim.  *See Todd* at 1095; Opp. at 19 n.42 (quoting *Todd*).  The Reply's newly cited *Massie* opinion[10] does not require a different result because there the Federal Circuit found that "the trial court strayed from the realm of legal remedies into that of equity."  *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000). Here, Plaintiffs clearly "present a claim for 'actual, presently due money damages from the United States.'"  *Id.* (quoting *Terran v. Sec'y of HHS*, 195 F.3d 1302, 1309 (Fed. Cir. 1999)).

### A.   When Payment is Due Under § 1342 is a Merits Question

Improperly attacking the merits through jurisdictional argument, Defendant's Reply asserts that no risk corridors payments are "yet due for *any participant*," that "Highmark must establish that the payments it seeks are presently due," and that "[i]t is *undisputed* that under [the three-year payment] framework, Highmark is not presently entitled to final 2014 benefit year payments."  Reply at 3-4 (emphasis added).  Of course, all of these assertions are disputed by Plaintiffs.  *See, e.g.*, Compl. ¶ 119 (challenging the Government's "unilateral decision to make only partial, prorated risk corridor payments for CY 2014, and to withhold delivery of full risk corridor payments for CY 2014 beyond 2015"); *id.* ¶ 162 (alleging that the United States breached its CY 2014 payment obligation when it failed to make full payment by the end of 2015).  Defendant's merits-based arguments improperly ignore Plaintiffs' well-pled allegations of fact–which must be accepted as true and "construed favorably to the pleader," disregard the

---

[6]   395 U.S. 1, 3 (1969).
[7]   *See* Opp. at 19 n.42.
[8]   386 F.3d 1091 (Fed. Cir. 2004).
[9]   *See* Opp. at 18-21.  Plaintiffs' request for declaratory relief is "incidental and collateral to their claims for money damages," and thus within the Court's jurisdiction.  *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 858-59 (Fed. Cir. 1992).  Defendant's Reply fails to challenge this authority.  *See* Reply at 11-12.
[10]   *See* Reply at 2, 3 n.2.

governing Rule 12(b)(1) standards, and ignore the fact that Plaintiffs are not required to prove their case at the pleading stage. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (holding that, on a 12(b)(1) motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims"). The Court has subject-matter jurisdiction over Count I, and should not entertain Defendant's merits-based arguments because Defendant did not challenge Plaintiffs' money-mandating statutory claim on 12(b)(6) grounds.

**B.      Deference is a Merits Question**

Attacking the merits, Defendant in its Reply urges the Court to give "deference" to its disputed three-year payment framework interpretation on its Rule 12(b)(1) motion and adds new assertions in support of its previous argument. *See* Reply at 5-8; Mot. at 19. None of Defendant's deference arguments are appropriate, however, because the Court must first assert its jurisdiction before examining whether it should provide any deference on the merits, as Defendant now urges. The Court long ago held that when "[w]e consider … the question of jurisdiction[,] … we assume that the [agency] officials misinterpreted the relevant statute; that the regulations which they purported to make pursuant to the statute were not authorized by the statute and were void; and that there was, therefore, no right in the Government to" engage in the conduct subject to the plaintiff's claim. *Pan Am. World Airways v. United States*, 122 F. Supp. 682, 683 (Ct. Cl. 1954); *see Fireman v. United States*, 44 Fed. Cl. 528, 538 (1999) ("*Pan Am[.]* … directs this Court to assume that the agency acted illegally when ruling on a jurisdictional question."). Defendant cites no authority suggesting that "deference" to the Government is appropriate in the Court's Rule 12(b)(1) analysis. *Cf. Scheuer* at 236 ("[O]n a motion to dismiss, … the allegations of the complaint should be construed favorably to the pleader.").

Assuming, *arguendo*, that the Court could give deference to an agency interpretation proffered by Defendant to determine its own subject-matter jurisdiction, such deference would

be inappropriate in this case because the facts alleged in the Complaint show that the
Government's *post hoc* three-year payment framework interpretation[11] is inconsistent with
Congress' intent in passing the ACA and Section 1342, and is even inconsistent with HHS' own
statements pre-dating *and* post-dating the April 2014 announcement of "budget neutrality."  *See,
e.g.*, Compl. ¶¶ 26-30, 105-10, 162-65; *see also* Opp. at 21-22.  "[T]he thoroughness, validity,
and consistency of an agency's reasoning are factors that bear upon the amount of deference to
be given an agency's ruling."  *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37
(1981).  The Supreme Court holds that courts "must reject administrative constructions of the
statute, whether reached by adjudication or by rule-making, that are inconsistent with the
statutory mandate or that frustrate the policy that Congress sought to implement."  *Id.* at 32.
Additionally, when an agency changes its position, as HHS did here in 2014, the agency's new
interpretation is entitled to less deference.  *See, e.g.*, *Pauley v. Beth-Energy Mines, Inc.*, 501 U.S.
680, 698 (1991) ("[T]he case for judicial deference is less compelling with respect to agency
positions that are inconsistent with previously held views.").  Further, although Defendant now
argues that HHS recording its risk corridor obligations as fiscal obligations of the United States
is a meaningless budgetary gesture, *see* Reply at 7-8, Defendant ignores that HHS also
repeatedly has confirmed that risk corridors payments for CY 2014 are due in "full" and are a
binding "obligation of the United States."  *See, e.g.*, Opp. at 1.[12]

---

[11]     Defendant takes issue with Plaintiffs' description of the Government's assertion that no payments are due
until 2017 as "*post hoc*."  *See* Reply at 7.  The description is accurate.  While HHS blindsided Plaintiffs and other
already-committed QHPs in April 2014 with its budget neutrality bulletin, that bulletin did not state that the
Government had no obligation to make risk corridors payments – for CY 2014, CY 2015, or CY 2016 – until
sometime in or after 2017.  *See* Compl. ¶ 108 & Ex. 32.  It was not until the day that the Government announced the
risk corridors shortfall and recognized its $2.5 billion liability to Plaintiffs and other QHPs – October 1, 2015 – that
Kevin Counihan informed Plaintiffs for the very first time that "we will not know the total loss or gain for the
program until the fall of 2017."  Compl. ¶ 118 & Ex. 35.  "[P]ost-hoc rationalizations will not create a statutory
interpretation deserving of deference."  *Parker v. Office of Pers. Mgmt.*, 974 F.2d 164, 166 (Fed. Cir. 1992).
[12]     Defendant ironically asks the Court to give deference to its selective interpretation of HHS' statements
regarding § 1342's payment obligations, while ignoring HHS' repeated confirmation that it owes Plaintiffs "full
payment" of its risk corridors arrears, and that it "will record risk corridors payments due as an obligation of the
United States Government for which full payment is required."  *See* Reply at 7; Opp. at 1.

### C.    Reasonableness is a Merits Question

Attacking the merits, and introducing arguments never raised in its Motion, Defendant's
Reply also urges the Court to rule it has no jurisdiction because Defendant asserts that its three-
year payment framework is "reasonable."  Reply at 8-10.  This merits-based argument, again,
cannot be made until after the Court determines it has subject-matter jurisdiction.  Additionally,
to accept the Government's position as "reasonable" would violate the 12(b)(1) standard of
review, which requires that the Court "must assume all factual allegations to be true *and draw all
reasonable inferences in the plaintiffs favor.*"  *Redondo v. United States*, 542 F. App'x 908, 910
(Fed. Cir. 2013) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)) (emphasis
added).  Although Defendant unsurprisingly disputes "Highmark's view" (Reply at 8), Plaintiffs'
well-pled facts are controlling and establish jurisdiction under the governing standard.  The
Complaint and Plaintiffs' Opposition set forth several valid reasons demonstrating why the
Government's *post hoc* three-year payment framework is unreasonable and contrary to
established case law.  *See, e.g.*, Compl. ¶ 162; Opp. at 21-22, 32.

## II.    PLAINTIFFS' CLAIMS ARE RIPE

Plaintiffs' claim for money damages to recover risk corridors amounts that are past due
and owing are not "abstract and premature," as Defendant contends.  Reply at 10.  Just as in
*Caraco Pharmaceutical*,[13] first cited in Defendant's Reply at 10, "[i]n this case, both prongs of
the ripeness inquiry are satisfied."  *Caraco Pharm.* at 1295.  Plaintiffs claim that the Government
has committed "breach of a present obligation," and Defendant's speculative suggestion that $2.5
billion worth of "additional payments are forthcoming" from either the Administration or
Congress for CY 2014 risk corridors payments should be met with abundant skepticism.
*Compare* Reply at 10 *with, e.g.*, Compl.¶¶ 119, 175-76, 220.  Moreover, the precise amount of

---

[13]    *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278 (Fed. Cir. 2008).

CY 2014 risk corridors payments due and owing to Plaintiffs is not "unknown": it is $222,939,981.70. *Compare Reply* at 10 *with* Compl. ¶ 145. Because "ripeness [is] treated as a jurisdictional question," *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 331 n.22 (2012) (Wolski, J.), the facts and all reasonable inferences must be construed in Plaintiffs' favor. *See Scheuer* at 236.

Furthermore, Defendant's new argument in its Reply that a delay in adjudication will present no "hardship in the legal sense of the word" on Plaintiffs because they "ha[ve] been aware of the three-year framework since April 2014" ignores the well-pled facts. Reply at 10. It was not until October 1, 2015, *after* Plaintiffs had already re-committed as QHPs for CY 2016 and upon announcing the massive CY 2014 risk corridors shortfall, that the Government for the first time unveiled its *post hoc* theory that no risk corridors payments are due – for any year – until sometime in or after 2017. *See, e.g.*, Compl. ¶ 118 & Ex. 35. Plaintiffs' CY 2014 risk corridors payments are past due, and their CY 2015 payments are also now ripe because HHS stated that the Government will not make any timely risk corridors payments at all for CY 2015, confirming the agency's final position on Counts I and V of its CY 2015 obligation payable by the end of December 2016, and its anticipatory breach under Counts II-IV of its CY 2015 obligation. *See* Opp. at 24 n.53 (describing effects of CMS' September 9, 2016 announcement).

There is no question that Plaintiffs certainly will experience hardship if the Court withholds judicial consideration of their claims for monetary damages until some indefinite time after 2017. Accepting Defendant's position would endorse the Government's ability to orchestrate an indefinite delay of this Court's review of any payment dispute by simply withholding payments due and assuring the Court that the issues will someday be worked out by the politicians. This Court consistently rejects such tactics designed to delay adjudication of ripe claims:

[T]he failure of Congress or an agency to appropriate or make available sufficient funds does not repudiate the obligation; it merely bars … the Government from dispersing funds and forces [the plaintiff] to a recovery in the Court of Claims.

*N.Y. Airways v. United States*, 369 F.2d 743, 752 (Ct. Cl. 1966).  Plaintiffs' claims are not

hypothetical, abstract or premature, and are ripe for adjudication.

## III.   COUNT II STATES A VALID CLAIM FOR BREACH OF EXPRESS CONTRACT

Defendant repeats in its Reply its insistence that the Court weigh the sufficiency of

Plaintiffs' evidence rather than construing the Complaint's well-pled facts in Plaintiffs' favor, as

is required on a Rule 12(b)(6) motion.  *See* Reply at 12-17.  Plaintiffs plausibly allege that the

CY 2014 QHP Agreements encompass the Government's risk corridors payment obligations, and

nothing further is required at this stage.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To consider outside evidence – such as other QHPs' contractual arrangements with the

Government, *see* Reply at 16 – is impermissible.

Defendant's new assertion in its Reply that Plaintiffs failed to "allege that [they]

understood the QHP Agreements to include a contractual obligation to make risk corridors

payments" is false.  Reply at 13.  The Complaint expressly states that "[t]he Government's

failure to make full and timely risk corridor payments to the Plaintiff Insurers is a material

breach of CMS's obligation to support the Plaintiff Insurers' functions as QHPs."  Compl. ¶ 188.

Defendant's new assertion that Plaintiffs' argument regarding § II.d of the CY 2014 QHP

Agreements "has no limiting principle" is false as well.  Reply at 14.  Section II.d does not, as

Defendant now contends, "expansively commit to support QHP operations in every conceivable

way."  *Id.*  That provision instead expressly requires the Government to "undertake all

*reasonable* efforts to implement systems and processes that will support QHP[] functions."  *Id.* at

13 (quoting § II.d) (emphasis added).  It was this express contractual obligation that the

Government breached.  *See* Compl. ¶¶ 182, 188.  "[T]he underlying factual issue of whether the

- 8 -

[agency] acted reasonably cannot be decided on a motion to dismiss." *Davis Wetlands Bank, LLC v. United States*, 114 Fed. Cl. 113, 124 (2013) (citing *TrinCo Inv. Co v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013)).  Plaintiffs also dispute Defendant's new interpretation in its Reply of "systems and processes" in § II.d.  *See* Reply at 14-15.  The QHP Agreements' plain language – the starting point of contract interpretation[14] – clearly contemplates more than just electronics, and nothing in § II.d indicates that surrounding subsections or a "Companion Guide" should be used to interpret its terms.  *See* Reply at 14-15.  Defendant's new invocation of *ejusdem generis* is inapposite, Reply at 15, because "that canon 'comes into play only when there is some uncertainty as to the meaning of a particular clause in a statute'" or contract.  *Hymas v. United States*, 810 F.3d 1312, 1321-22 (Fed. Cir. 2016).

Additionally, contrary to Defendant's assertion, § V.g of the CY 2014 QHP Agreements does "*explicitly* provide[] for the incorporation" of the Government's statutory and regulatory risk corridors payment obligations.  Reply at 15 (quoting *St. Christopher Assoc., L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008)).  Section V.g expressly states that the CY 2014 QHP Agreements include "without limitation such regulations as may be promulgated from time to time by the Department of Health and Human Services or any of its constituent agencies," including 45 C.F.R. § 153.510.

Finally, Defendant's new argument that Plaintiffs fail to plausibly plead breach of the CY 2014 QHP Agreements or damages is insupportable.  *See* Reply at 17.  The Complaint is replete with factual allegations regarding the Government's breach of the terms of the express contracts as stated in Count II, and damages are alleged to the penny.  *See, e.g.*, Compl. ¶¶ 188-92.

---

[14]    *See, e.g.*, *San Carlos Irrigation & Drainage Dist. v. United States*, 84 Fed. Cl. 786, 795 (2008) (citing Federal Circuit cases).

IV.   **COUNT III STATES A VALID CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT**

Defendant is correct that Plaintiffs' implied-in-fact contract claim in Count III "stands on three legs."  Reply at 18.  But Defendant's Reply fails to recognize that when those "three legs" are viewed together, as they must be, Plaintiffs' allegations clearly support a reasonable inference of an implied-in-fact contract, which Defendant concedes is the relevant standard.  *Id.*

A.   **The "Surrounding Circumstances" Include Government Conduct**

Defendant's newly introduced case of *Brooks v. Dunlop Mfg. Inc.*, looks only to "whether a statute creates a contract," which has no applicability to Plaintiffs' claim in Count III because *Brooks* contains no mention of governmental conduct.  702 F.3d 624, 631 (Fed. Cir. 2012).  Likewise for Defendant's newly cited case, *Stanwyck v. United States*, 127 Fed. Cl. 308, 313 (2016) (Wolski, J.), which addresses only statutory language and does not address governmental conduct.  Both cases rely on the Supreme Court's opinion in *Nat'l R.R. Passenger Corp. v. Atchison*, which itself supports Plaintiffs' – not Defendant's – argument because, in analyzing "whether a particular statute gives rise to a contractual obligation," the Court recognized that it is appropriate to consider whether "*the circumstances of the Act's passage* belie an intent to contract away governmental powers."  470 U.S. 451, 466, 468 (1985) (emphasis added).  Here, Plaintiffs plausibly allege that the circumstances surrounding § 1342's passage, in addition to Plaintiffs agreeing to become QHPs and HHS' repeated assurances, support the "conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."  *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996); *see, e.g.*, Compl. ¶¶ 2-7, 88-104.

Defendant resorts to attacking as "dicta" language from *ARRA Energy*, a case Defendant quoted in its Motion.  Reply at 19; Mot. at 31.  *ARRA Energy* very clearly gives plaintiffs two options for overcoming the presumption against statutorily created contract rights:  (i) citing specific language in the statute, or (ii) pointing to "conduct on the part of the government that

allows a reasonable inference that the government intended to enter into a contract." *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 27 (2011); Mot. at 31.  Contrary to Defendant's description of *ARRA Energy* in its Reply, the plaintiff there failed to cite *any* governmental conduct beyond mere passage of the statute, which was not enough to overcome the presumption.  *See ARRA Energy* at 27.  Defendant's Reply disregards that "language of offer, acceptance, or contractual intent," Reply at 20, can be inferred from "the surrounding circumstances."  *Hercules* at 424.  If governmental conduct could not form the basis of an implied-in-fact contract, then *New York Airways* was wrongly decided, which Defendant does not assert.  In fact, despite its unquestionable similarity to the circumstances present in this case, Defendant barely attempts to distinguish *New York Airways* at all.  *See N.Y. Airways*, 369 F.2d at 751.[15]

## B.    The Complaint Alleges Actual Authority

Ignoring the Complaint's well-pled allegations, Defendant's Reply erroneously asserts for the first time that just one paragraph in the Complaint "purport[s] to establish authority to contract."  Reply at 21.  In addition to Paragraph 201, Plaintiffs' Complaint actually addresses the Government's authority to contract in Paragraphs 41, 89, 103, 104, 117, 120, 160, 195, and 206.  Defendant's repeated criticism that the Complaint does not specifically name any of the Government agents fails to address the binding case law holding that no such requirement exists at this stage of the proceedings.  *See* Opp. at 40.  Plaintiffs do not, as Defendant contends in its Reply, "rely on implied authority" in any of its contract claims.  Reply at 22.  Rather, the Complaint relies on "actual authority," *e.g.*, Compl. 201, which includes both "express" and "implied" actual authority.  *See* Opp. at 39.  Defendant's new argument in its Reply about Kevin

---

[15]    Defendant's unsupported assertion that *New York Airways* is somehow obviated by "more recent" cases ignores that *New York Airways* remains good law.  *See, e.g.*, *Prairie Cnty. v. United States*, 782 F.3d 685, 689 (Fed. Cir. 2015) (citing *N.Y. Airways*).

Counihan's actual authority – express or implied – to enter into or ratify risk corridors contracts raises disputed factual questions inappropriate for resolution on a motion to dismiss.  *See* Reply at 22.

### C.      HHS Officials Had Contractual Authority

The Reply expands Defendant's assertion that Plaintiffs failed to establish that the Government had "budget authority" in addition to contractual authority.  Mot. at 34; Reply at 23-24.  The Complaint alleges sufficient facts to support a reasonable inference that HHS officials had authority to enter into the express or implied-in-fact contracts with the QHPs.  *See, e.g.*, Compl. ¶¶ 41, 89, 103, 104, 117, 120, 160, 195, 201, 206.

No separate requirement exists to also establish "budget authority" to allege an implied-in-fact contract against the Government, and Defendant cites no authority otherwise.  Defendant completely ignores that the Anti-Deficiency Act ("ADA") expressly carves out an exception to the above limitation when the obligation is "authorized by law."  Opp. at 41 (quoting 31 U.S.C. § 1341(a)(1)(B)).[16]  The Federal Circuit has explained that such a statutory grant of contracting authority, even if not expressly stated, "bypass[es] the ADA's restrictions."  *Shell Oil Co v. United State*s, 751 F.3d 1282, 1301 (Fed. Cir. 2014) (holding that multi-year contracts obligating the Government to make reimbursements did not violate the ADA because the contracts, though not expressly stated, were authorized by Executive Order); *see also N.Y. Airways* at 752 (holding that an implied-in-fact, statutorily authorized, multi-year contract was authorized by law, rendering the ADA inapplicable); *Chevron U.S.A., Inc. v. United States*, 20 Cl. Ct. 86, 89 (1990).  Here, the Government's obligation to make risk corridors payments was "authorized by law"

---

[16]      Plaintiffs do not contend that the express or implied actual authority stemmed from a GAO opinion, but rather based on the officials' positions within HHS.  *See* Reply at 23-24; *see also H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989).  The GAO opinion merely confirms Plaintiffs' interpretation:  that HHS agents had the authority under § 1342 to obligate funds to QHPs through express or implied-in-fact contracts.  *See* Comp. Gen. B-325630, at 3 (Sept. 30, 2014).  Although in many instances the ADA prohibits the Government from entering into contracts that bind the United States beyond one fiscal year, Defendant's assertion that HHS lacked "budget authority" to enter into multi-year contracts effective beyond 2014 is incorrect. Reply at 23-24.

because it was written into § 1342 ("shall pay") and its implementing regulations ("will pay"). There is no additional "budgetary authority" pleading burden as Defendant now contends.[17]

### D.      Defendant Undermines Its Preclusion Argument

The implied-in-fact contracts in Count III address the subject matter of the Government's obligation to make full and timely risk corridors payments, on an annual basis. *See* Compl. ¶ 194. Defendant's Reply argues that Plaintiffs "cannot base an implied contract on subject matter that is already the subject of the express QHP Agreements." Reply at 25. But Defendant expressly contends that the QHP Agreements "have nothing to do with the risk corridors program [and] contain no mention of risk corridors payments." *Id.* at 13. If that is true, then Defendant cannot challenge Count III on this basis. While Rule 8(d) permits Plaintiffs to plead in the alternative, there is no similar rule for Defendant. Defendant cannot have it both ways. If the QHP Agreements do not contain an obligation for the United States to make risk corridors payments as Defendant contends, then Count III states a plausible claim for relief under Rule 12(b)(6). Correspondingly, if the QHP agreements do contain such obligations, the Court need not consider the implied-in-fact contract claim.

### CONCLUSION

For the foregoing reasons, as well as those stated in their Opposition, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss brought under Rule 12(b)(1) against Counts I-V, and under Rule 12(b)(6) against Counts II-V.

---

[17]      This is also why Defendant's reliance in its Reply on *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442 (Fed. Cir. 1997), is misplaced. *See* Reply at 23-24. In *Cessna*, the Federal Circuit did not address the exception to the ADA relevant here, which allows the Government to obligate funds beyond the current fiscal year if "authorized by law." 31 U.S.C. § 1341(a)(1)(B). Instead, the court rejected the argument that the ADA had been violated by the obligation of multi-year contract payments prior to appropriation and apportionment of the funds, explaining that the Government has authority, in certain circumstances such as pursuant to 10 U.S.C. § 2306c, to enter into multi-year contracts prior to the appropriation of funds for periods of "up to five years, with option to extend performance by a period not exceeding three additional years." *Cessna* at 1449-50.

Dated: November 10, 2016          Respectfully Submitted,

s/ Lawrence S. Sher
Lawrence S. Sher (D.C. Bar No. 430469)
**REED SMITH LLP**
1301 K Street NW
Suite 1000-East Tower
Washington, DC 20005
Telephone: 202.414.9200
Facsimile: 202.414.9299
Email: lsher@reedsmith.com

*Of Counsel:*

Daniel I. Booker (D.C. Bar No. 377926)
Kyle R. Bahr (D.C. Bar No. 986946)
Conor M. Shaffer (PA Bar No. 314474)
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: 412.288.3131
Facsimile: 412.288.3063
Email: dbooker@reedsmith.com
      kbahr@reedsmith.com
      cshaffer@reedsmith.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2016, a copy of the foregoing Plaintiffs' Sur-Reply to the United States' Motion to Dismiss were filed electronically with the Court's Electronic Case Filing (ECF) system.  I understand that notice of this filing with be sent to all parties by operation of the Court's ECF system.

s/ Lawrence S. Sher
Lawrence S. Sher
*Counsel for Plaintiffs*
