**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| FIRST PRIORITY LIFE INSURANCE COMPANY, INC., *et al.* ) ) ) Plaintiffs, ) ) v. ) ) THE UNITED STATES OF AMERICA, ) ) Defendant. ) ) | No. 16- 587C Judge Wolski |

**PLAINTIFFS' REPLY TO THE UNITED STATES' RESPONSE TO THE BRIEF OF *AMICUS CURIAE* PENNSYLVANIA INSURANCE DEPARTMENT**

Plaintiffs, First Priority Life Insurance Company, Inc., and other Highmark Plaintiffs (collectively, "Plaintiffs"), respectfully submit this reply to Defendant's response (ECF No. 22) regarding the Pennsylvania Insurance Department's ("PID") brief as *amicus curiae* (ECF No. 11-2). Plaintiffs submit this reply to clarify for the Court several mischaracterizations and inappropriate arguments regarding the facts and issues in this case that Defendant has raised in its response to the *amicus* brief. The PID filed an *amicus* principally to explain to the Court, as a regulator, "the impact the partial and delayed Risk Corridors payments have had on" Plaintiffs, and to emphasize that risk corridors "were seen as mechanisms to incentivize participation in the Exchange in the face of unpredictability" in the new markets. ECF No. 11-2 at 2, 4. Therefore, it is not surprising that the PID did not attempt to address certain issues Defendant now criticizes the Department for omitting from its *amicus* brief. Indeed, the parties already have fully briefed the issues on Defendant's pending Motion to Dismiss, and thus there was no need for Defendant to repeat its previously-briefed arguments in response to the PID's *amicus* filing.

First, Defendant includes three bullet-points that purport to describe "the narrow issues currently before the Court," but which actually mischaracterize the issues that are actually

pending. ECF No. 22 at 2. Notably, Defendant failed to include the issues as Plaintiffs previously have stated them for the Court in their Opposition to the United States' Motion to Dismiss. *See* ECF No. 12 at 3-4. As set forth in Plaintiffs' Opposition, and in contrast to Defendant's bullet-points, there is no question that the Court has jurisdiction to hear all of Plaintiffs' claims and that all of Plaintiffs' claims are ripe for adjudication. Defendant's arguments whether risk corridors payments are "presently due" or must be paid annually apply the wrong legal standard and unquestionably go to the merits of Plaintiffs' claims, not to jurisdiction or ripeness. *See* ECF No. 12 at 17-22. Moreover, Defendant's Rule 12(b)(6) challenge to Counts II-V requires the Court to determine whether the Complaint asserts plausible claims for relief; the Court is not weighing the sufficiency of evidence, nor has Defendant moved for summary judgment. *See id.* at 23-48.

Second, Defendant argues that the Court should give deference to the Government's so-called "three-year payment framework" for the purposes of the Court determining whether it has jurisdiction over this case – even when the well-pled facts militate against any such deference. As demonstrated in Plaintiffs' Sur-Reply Brief (ECF No. 21 at 4), however, deference is a merits issue, not germane to the Court's jurisdictional analysis on Defendant's Rule 12(b)(1) challenge to Plaintiffs' Count I. Nor is it surprising that the PID's *amicus* filing does not address "the reasons why the three-year framework is entitled to deference" for the Court to determine its own jurisdiction, as Defendant now contends. ECF No. 22 at 2.[1]

None of the three reasons Defendant now lists in its response to the PID's *amicus* support

---

[1] The PID similarly had no reason to address Defendant's arguments regarding whether Defendant's "three-year payment framework" argument "fills a gap left in the statute." ECF No. 22 at 2. Even if the Court were to consider the deference issue to determine its own jurisdiction, because § 1342 mandates that risk corridors payments shall be made annually as part of "a program of risk corridors for calendar years 2014, 2015, and 2016," identical to the Medicare Part D risk corridors program that Congress instructed the ACA risk corridors program to be "based on," 42 U.S.C. § 18062(a), there was no "gap" in the statute that needed to be filled.

the Court giving HHS deference to determine whether the Court has jurisdiction to hear Plaintiffs' statutory money-mandating claim.  *See* ECF No. 22 at 2.  With respect to the first reason Defendant cites, although Congress may not have included in § 1342 "a specific appropriation of risk corridors payments" (*id.*), Congress intentionally made § 1342 a money-mandating statute by expressly stating that the HHS Secretary "shall pay" risk corridors payments to qualifying QHPs.  42 U.S.C. § 18062(b)(1).  Second, Defendant's reference to "the Congressional Budget Office's scoring of the ACA" is a red herring.  ECF No. 22 at 2. Defendant cites no legitimate authority, by the CBO or Congress, explaining why risk corridors were not included in the CBO's 2010 Report regarding the ACA.  Regardless, Defendant ignores that this Court recognizes that "the CBO's 'view — on which the Congress did not vote, and [which] the President did not sign — cannot alter the meaning of enacted statutes.'" *Sharp v. United States*, 80 Fed. Cl. 422, 436 (2008) (quoting *Ameritech Corp. v. McCann*, 403 F.3d 908, 913 (7th Cir. 2005)).  Third, the FY 2015 and FY 2016 "Spending Laws and their legislative history," which Defendant now contends "recognized" and belatedly "blessed the three-year framework" (ECF No. 22 at 2), have no bearing on the 2010 Congress' intent in passing § 1342. The Supreme Court instructs that "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).  While the FY 2015 and FY 2016 Appropriations Acts may have prevented HHS from complying with § 1342's mandatory payment obligation, "[i]t has long been established that the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute." *N.Y. Airways v. United States*, 369 F.2d 743, 748 (Ct. Cl. 1966).

Third, although Defendant criticizes the PID for providing opinions that Defendant now claims are not relevant (ECF No. 22 at 2), in its response, Defendant neglects to address the PID's point regarding *the timing* of the Government's representations to QHPs like Plaintiffs. *See* ECF 11-2 at 5-6.  Specifically, the PID emphasizes that the Government changed its interpretation only *after* it had induced insurers to sign up and commit to offer QHPs on the Exchanges, from which they could not withdraw for the duration of the plan year.  *See id.*; *see also* 45 C.F.R. § 156.290(a)(2); 45 C.F.R. § 147.104.[2]  Moreover, the PID correctly explains that it was not until October 1, 2015 – "*after* insurers had signed their 2016 QHP Agreements and finalized their products and rates for 2016" – that the Government finally revealed for the first time that risk corridors collections would not equal or surpass the Government's risk corridors payment obligations.  ECF No. 11-2 at 5-6; *see also* Compl. ¶ 115 & Ex. 34.[3]

Defendant in its response also refers to a purported "undisputed chronology of events" (ECF No. 22 at 3), which not only ignores the well-pled facts in the Complaint and its Exhibits, but is misleading and inaccurate.  For example, Defendant omits that HHS' April 2014 budget neutrality bulletin assured Plaintiffs that the Government "anticipate[d] that risk corridors collections will be sufficient to pay for all risk corridors payments."  Compl. ¶ 108 & Ex. 32.  The April 2014 bulletin also did not suggest that HHS would not make any risk corridors payments until 2017; that *post-hoc* theory was not unveiled by HHS until October 1, 2015, when it announced the CY 2014 risk corridors shortfall and understood its liability to QHPs, like

---

[2]  Defendant's assertion that "issuers are statutorily obligated to participate in the risk corridors program regardless of whether they signed any QHP Agreements with HHS," obfuscates the issue and misses the point. Plaintiffs do not rely on the QHP Agreements themselves as the reason they could not withdraw from the ACA Exchanges.  Rather, Plaintiffs argue that, due to the Government's promise that it "shall pay" risk corridors payments each year, Plaintiffs agreed to enter the ACA Markets and sign QHP Agreements.  *See, e.g.*, Compl. at ¶¶ 33, 39.

[3]  Defendant also fails to mention that before Plaintiffs and other insurers committed as QHPs for CY 2014, HHS stated that QHPs would receive risk corridors payments at the same time that QHPs paid risk corridors charges to the Government.  *See* Compl. ¶ 83 & Ex. 22 ("QHP issuers who are owed these amounts will want prompt payment, and payment deadlines should be the same for HHS and QHP issuers.").

Plaintiffs, that were owed risk corridors payments for that year.[4]  *See* Compl. ¶ 118 & Ex. 35.  Although Defendant asserts that "the industry … projected a significant shortfall in collections" for risk corridors in April 2014, that claim is unsupported and contrary to the well-pled allegations in the Complaint, which must "be construed favorably" to the Plaintiffs.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Finally, although Defendant acknowledges that risk corridors was a "three-year" program (ECF No. 22 at 4), Defendant ignores the effect, described by the PID, that the failure to pay annual risk corridors payments has had on insurers.  *See* ECF No. 11-2 at 10-13.  <u>According to Defendant, Congress' express "shall pay" mandate in § 1342 to make risk corridor payments to participating QHPs now means nothing at all, and QHPs should have *no expectations* about when they will receive payments.</u>  According to Defendant, Plaintiffs voluntarily agreed to participate in the new ACA Exchanges, take on potentially devastating financial risk in the face of undisputed actuarial uncertainties, and insure many thousands of previously uninsured Americans, without *any* expectation of risk corridors payments—*ever*.  To recover in this Court, however, Plaintiffs do *not* need to prove, as Defendant now suggests, that they would have "withdrawn" from the Exchanges, would have become "insolvent," or would have requested additional premiums, without the timely receipt of risk corridors payments.  Regarding Defendant's pending Motion to Dismiss, moreover, Plaintiffs need only establish that the Court

---

[4]  The Government just announced the CY 2015 risk corridors shortfall on November 18, 2016.  Against $95.3 million in risk corridors collections, HHS acknowledged it owes QHPs over $5.8 billion in risk corridors payments for CY 2015, with the CY 2015 collections amount going exclusively toward the $2.5 billion remaining for still-outstanding CY 2014 risk corridors payments.  *See* CMS, Risk Corridors Payment and Charge Amounts for the 2015 Benefit Year (Nov. 18, 2016), *available at* https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/2015-RC-Issuer-level-Report-11-18-16-FINAL-v2.pdf.  Plaintiffs' combined CY 2015 risk corridors payments owed is $292,534,855.43.  *See id.*  HHS now says it will pay just $7,405,691.31 in prorated CY 2015 payments toward Plaintiffs' combined CY 2014 risk corridors payment owed of $222,939,981.70, in addition to the $27,334,068 in prorated payments that Plaintiffs received for CY 2014.  *See id.*  In total, Plaintiffs are owed $515,474,837.13 in CY 2014 and CY 2015 risk corridors payments, but have received or been promised to receive just $34,739,759.31 of that amount from CY 2014 and CY 2015 collections – only 6.7 percent.

has jurisdiction over Plaintiffs' money-mandating claims, that the claims are ripe, and that Counts II-V are plausible on their face and give Defendant fair notice of what the claims are and the grounds upon which they rest.

For these reasons, and those stated in Plaintiffs' previous memoranda filed with the Court (ECF Nos. 12, 21), Defendant's arguments presented in its response to the Pennsylvania Insurance Department's *amicus* brief should be given no weight, and Defendant's Motion to Dismiss (ECF No. 8) should be denied in all respects.

Dated: November 23, 2016

Respectfully Submitted,

s/ Lawrence S. Sher
Lawrence S. Sher (D.C. Bar No. 430469)
**REED SMITH LLP**
1301 K Street NW
Suite 1000-East Tower
Washington, DC 20005
Telephone: 202.414.9200
Facsimile: 202.414.9299
Email: lsher@reedsmith.com

*Of Counsel:*

Daniel I. Booker (D.C. Bar No. 377926)
Kyle R. Bahr (D.C. Bar No. 986946)
Conor M. Shaffer (PA Bar No. 314474)
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: 412.288.3131
Facsimile: 412.288.3063
Email: dbooker@reedsmith.com
          kbahr@reedsmith.com
          cshaffer@reedsmith.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2016, a copy of the foregoing Plaintiffs' Reply to the United States' Response to the Brief of *Amicus Curiae* Pennsylvania Insurance Department was filed electronically with the Court's Electronic Case Filing (ECF) system.  I understand that notice of this filing with be sent to all parties by operation of the Court's ECF system.

s/ Lawrence S. Sher
Lawrence S. Sher
*Counsel for Plaintiffs*
